DeForest C. Pitt, J.
Consolidated Edison Company of New York, Inc., sought a Federal license for the construction and operation of facilities known as the Cornwall Project to be constructed on the west bank of the Hudson River in the Village and Towns of Cornwall and Highlands in Orange County, New York. The project is described as a pumped storage hydroelectric generating facility. The purpose of the project is stated to be to supply electricity to the metropolitan New York region and the New York power pool during periods of peaked demand and during periods of emergency. In its operation the facility, to be the largest in the world, would pump water from the Hudson River at night and on weekends to a storage reservoir and then discharge the water back into the river when generating electricity.
Section 21 (subd. [b]) of the Federal Water Pollution Control Act (TJ. S. Code, tit. 33, § 1171, subd. [b]) provides that an applicant for a Federal license to construct or operate facilities which will result in discharge into navigable waters shall provide the licensing agency (the Federal Power Commission in this instance) with a certification from the State that there is “ reasonable assurance * * * that such activity will be conducted in a manner which will not violate applicable water quality standards ”. The noted section continues, “ Such State * * * shall establish procedures for public notice in the case of all applications for certification by it, and to the extent it deems appropriate, procedures for public hearings in connection with the specific applications. * * * No license * * * shall be granted until the certification required by this section has been obtained or has been waived * * *. No license * * * shall be granted if certification has been denied by the State ”.
Thus, reserved to the State by this Federal legislation is the opportunity to consider water quality standards of the navigable water within its boundaries. This opportunity became an obligation of the respondent Commissioner under section 15 (subds. 10, 13) of the Environmental Conservation Law and section 1210 of the Public Health Law. Pursuant to these sections the Commissioner gave notice of the application pending before him as well as an opportunity for objections to the same to be filed. Apparently, finding that a public hearing was necessary to assist him in his determination the Commissioner, pursuant to discretionary authority contained in rules and regulations promulgated by him, ordered that a public hearing be held. (6 NYCRR 611.16 [b] [1] [i], [ii] and [2].)
*3 The issues before this court narrow to a consideration of what questions were to be properly considered by the respondent Commissioner in determining the application before him, and whether or not he erred in granting the noted certificate.
Casting aside certain aesthetic considerations urged by the petitioners the court finds that properly before the Commissioner were questions of salt water contamination, potential damage to the Catskill Aqueduct, thermal pollution of the waters of the Hudson, as well as the effect of the project upon the fish population of the Hudson and of certain salt water species which spawn in its waters. It is to- this court’s mind of no moment that some of these questions may well have been considered at the Federal licensing level. These questions clearly concern water quality standards. The Commissioner was then obligated to examine into these questions to determine whether or not the proposed project would in any manner violate existing water quality control standards. He is called upon by statute to certify that there is reasonable assurance that the project would not violate such standards.
It is urged that the Commissioner acted in excess of his jurisdiction and in violation of law. This argument is sound. The report of the Commissioner’s hearing officer noted that there exists a complete absence of studies concerning salt water contamination. It admitted, also, a lack of assurance that the waters would not be thermally polluted. It recognized that the fish would be killed. The aqueduct problem received no consideration. In short the report to the Commissioner and the Commissioner’s determination itself reflected a lack of the “ reasonable assurance ” that he was thereafter to certify existed. Indeed, and notwithstanding the fact that the noted section 21 (subd. [b]) called for the present existence of reasonable assurance, the respondent Commissioner attempted to provide for the future assurance of the same. This was done by attaching to his certification conditions. In effect these conditions would require Consolidated Edison immediately to terminate the operation of its project upon evidence of “ violations or contravention of the water qualities standards assigned to the Hudson River,” and specifically noted as areas of concern “ thermal pollution and salt water intrusion.” The monitoring of the project to assure that these conditions were fulfilled was delegated to Consolidated Edison.
It is argued that this delegation of authority by a public agency to a private entity is unlawful. It is also urged that in operation the conditions are impractical to the point of being *4 ridiculous in the light of human experience. Consolidated Edison is by these conditions called upon to police itself and if it finds itself violative of the Commissioner’s conditions to abandon immediately its multi-million dollar project. This court, hearing no sound contrary argument and failing to imagine any, concludes the conditions to be meaningless in law and in fact.
Certainly, the conditions reflect the lack of the existence of present reasonable assurance. What factual presentation would constitute reasonable assurance may and must be left to the sound determination of the Commissioner. But, this state of assurance must be founded upon something factual. The Commissioner has effectively demonstrated that he did not possess this assurance at the time he issued his certificate. His act, therefore, was in excess of his authority and in violation of law.
The above renders unnecessary specific treatment of other issues and of the objections in point of law seeking dismissal.